IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION

| | | |
|---|---|---|
| GARIOUN MARTIN, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 1:23-CV-00052-H-BU |
| TAYLOR COUNTY, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |
| | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS
## OF THE UNITED STATES MAGISTRATE JUDGE

Plaintiff Garioun Martin brings this action against Defendants Taylor County, the 326th District Court of Texas, and the Office of the Attorney General's Child Support Division (collectively, "the Defendants"). Martin claims that the Defendants instituted a child-support proceeding against him, made him sign an acknowledgement of paternity through "trickery, deceit, misrepresentation, and force," and garnished his wages to make support payments. Dkt. No. 1 at 41 (footnotes omitted). Martin alleges that these actions violated federal law and his constitutional rights.

The case is now before the Court after each of the Defendants filed a motion to dismiss. After reviewing those motions, Martin's responses, and the applicable law, the undersigned RECOMMENDS that the Court GRANT the motions.

1

# I. JURISDICTION

This Court has jurisdiction under 28 U.S.C. § 1331 because Martin seeks to vindicate the alleged violation of his civil rights under 42 U.S.C. § 1983. The undersigned has the authority to issue the following findings, conclusions, and recommendations after United States District Judge James Wesley Hendrix automatically referred this case to the undersigned for pretrial management under Special Order No. 3-251. 28 U.S.C. § 636(b)(1)(B).

Regarding venue, § 1983 does not contain a specific venue provision. *See* 42 U.S.C. § 1983. Accordingly, the Court determines venue under the general venue provision in 28 U.S.C. § 1391(b). *See Williams v. Hoyt*, 556 F.2d 1336, 1341 (5th Cir. 1977) (citing 28 U.S.C. § 1391(b) as venue provision applicable to section 1983 actions). Under § 1391(b), "[v]enue for a Section 1983 action lies in the judicial district where a defendant resides, or in the judicial district where a substantial part of the events or omissions giving rise to the claims occurred." *Trujillo v. Dr. Arce*, No. 5:03-CV-114-C, 2003 WL 21266974, at *1 (N.D. Tex. May 27, 2003). Martin is a Texas citizen residing in Naples, Texas, Dkt. No. 1 at 12, which is in the Eastern District of Texas. But his child-support proceedings occurred in Taylor County. Thus, venue is proper in the Abilene Division of the Northern District of Texas.

## II. FACTUAL BACKGROUND[1]

Martin says he was tricked by the Defendants to participate in a child-support proceeding and sign a voluntary acknowledgment of paternity. *Id.* at 38. The 326th District Court entered a support order against Martin, and the other Defendants garnished his wages to satisfy his support obligations. *See id.* at 40–42.

## III. THE PARTIES

### A.  Martin's Claims

Martin brings seven claims alleging that the Defendants violated 18 U.S.C. § 241 and his rights under the Fourth, Fifth, Seventh, Thirteenth, and Fourteenth Amendments to the United States Constitution. Dkt. No. 1 at 21–43. What follows is a summary of those claims.

*18 U.S.C. § 241.* Martin alleges that the Defendants violated 18 U.S.C. § 241 when they used "clever deception" to get him to participate in a child-support proceeding under the guise that there was an actual judicial proceeding. Dkt. No. 1 at 21–28. But beyond mere cunning and guile, Martin claims that the Defendants employed "force and coercion" to compel his continued participation and acknowledgment of paternity. *Id.* at 26. This force and coercion purportedly came in the form of threats of "driver's license suspension, and arrest." *Id.*

*Fourth Amendment.* Construed liberally, Martin's Complaint can be read to raise two theories of how the Defendants violated his Fourth Amendment right to be free from

---

[1] Despite spanning 75 pages, Martin's Complaint contains few truly factual allegations.

3

unreasonable seizures.[2] Dkt. No. 1 at 26, 30–34. First, he alleges that he suffered an un-constitutional seizure of his person during the support proceeding because, "[t]he bailiffs who are participating in the hearings have guns," and he "is under duress [of] incarceration or bodily injury because he does not want to participate in the administrative hearings as if they are judicial." *Id.* at 26.

Second, Martin complains that the Defendants unconstitutionally seized his prop-erty when they garnished his wages without a valid warrant. *Id.* at 30. Martin says he de-manded that the Defendants produce a valid court order authorizing the garnishment, but the orders shown to him were void, and "a mere direction with no obligatory force," *id.* at 34, because they lacked a judicial signature "according to 28 U.S.C. § 1691." *Id.* at 32 (footnote omitted).

*Due Process.*[3] Martin claims that the support proceeding did not afford him proce-dural due process. Dkt. No. 1 at 35–39. First, Martin contends that the judge in his case was not impartial, saying, "[t]he 326th District Court and Paul R. Rotenberry [we]re both to be impartial, but they [we]re not because their salaries are depended [sic] upon the case." *Id.* at 38. He also claims that his case needed to "be presided over by an individual who is

---

[2] Martin appears to rely solely on the Fourth Amendment's proscription against unreasonable seizures as nothing in his Complaint indicates that the Defendants effectuated a search of his person, house, papers, or effects. *See generally* Dkt. No. 1.

[3] Martin's Complaint alleges the violation of his rights under the Fifth Amendment's Due Process Clause, however, the undersigned construes Martin's Complaint under the Fourteenth Amendment's Due Process Clause which applies to the States. *See Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 236 (5th Cir. 2022) ("The clauses differ only in that the Fifth Amendment Due Process Clause limits the federal government, while the Fourteenth Amendment Due Process Clause limits the states."), *cert. denied sub nom.*, 143 S. Ct. 1021 (2023).

not a judge of the court," but at the same time, he complains that he did not get his day in court because he was never seen before a "judicial judge." *Id.* at 38–39.

Second, Martin contests whether his actions during the support proceeding were voluntary. Borrowing from his Fourth Amendment claim, Martin contends that he was coerced by the Defendants to participate in the proceeding, and that this coercion violates due process. *Id.* at 38. Martin also asserts that the Defendants did not inform him of the legal consequences of voluntarily acknowledging paternity "as they must according to 45 C.F.R. 303.101(C)(2)." *Id.* at 36 (footnote omitted).

*Privilege Against Self-Incrimination.* In a similar vein, Martin complains that he was compelled to bear witness against himself. Dkt. No. 1 at 35–39. In support of this claim, Martin alleges that the Defendants did not advise him of the legal ramifications of acknowledging paternity, did not read him his *Miranda* rights, nor did they inform him of his right to remain silent. *Id.* at 36.

*Seventh Amendment.* Martin makes the claim that the Defendants violated the Seventh Amendment by refusing his demands for a trial by jury during the support proceeding. Dkt. No. 1 at 28–30.

*Thirteenth Amendment.* Martin asserts that he has been forced into involuntary servitude in violation of the Thirteenth Amendment because the Defendants have made him pay child support under the threat of legal repercussions should he refuse. Dkt. No. 1 at 39–42.

*Equal Protection.* Finally, Martin says the Defendants violated the Fourteenth Amendment's Equal Protection Clause, claiming men are treated differently because "[t]he

5

mother is given the ability to close the case at will in 45 C.F.R. § 303.11(12)." Dkt. No. 1 at 43 (footnote omitted).

As relief, Martin requests: (1) that "[t]he Defendants terminate the Title IV-D case # 47,539-C and #0012984352 with prejudice;" (2) an order instructing the Office of the Attorney General to remove entries appearing on Martin's credit report; (3) damages; and (4) an order for the return of property. Dkt. No. 1 at 49–50.

## B.    Defendants' Motions to Dismiss

### 1.    *Defendants' Motions*

The 326th District Court's Motion to Dismiss seeks dismissal under Rule 12(b)(1) for lack of subject-matter jurisdiction and Rule 12(b)(6) for failure to state a claim. Dkt. Nos. 8–9. The 326th District Court argues that this Court lacks subject-matter jurisdiction because: (1) the 326th District Court has Eleventh Amendment immunity; (2) the *Rooker-Feldman* doctrine bars jurisdiction; (3) Martin lacks standing; and (4) the Court should decline jurisdiction under the *Younger*-abstention doctrine. Dkt. No. 9. The 326th District Court also argues that Martin has failed to state a claim upon which relief may be granted because it is a nonjural entity that is incapable of being sued. *Id.* at 9.

The Office of the Attorney General argues under Rule 12(b)(1) that this Court lacks subject-matter jurisdiction because the Office is entitled to Eleventh Amendment immunity and Martin lacks standing to bring suit under 18 U.S.C. § 241. Dkt. No. 19.

Taylor County's Motion to Dismiss generally argues for dismissal under Rule 12(b)(6) for failure to state a claim. Dkt. Nos. 12–13.

## 2.    *Martin's Responses*

Martin argues that neither the 326th District Court nor Office of the Attorney General are entitled to Eleventh Amendment immunity because the Eleventh Amendment, "only applies to individuals who are a part of the State of Texas and functioning according to the State not individuals who are operating by Title IV-D contract in an independent capacity for a private business." Dkt. No. 10 at 8.

To understand Martin's argument, some background is necessary. Martin contends that the Defendants initiated the child-support proceeding based on an agreement under Title IV-D of the Social Security Act.[4] Dkt. No. 1 at 14–15. As Martin sees it, the Office of the Attorney General contracts with Taylor County—more specifically, Taylor County's Domestic Relations Office—to carry out Title IV-D functions within the County. *Id.* at 15. The Office of the Attorney General also contracts with the 326th District Court for "magistrate services" during Title IV-D cases. *Id.* at 24–25. In return for these services, Taylor County and the 326th District Court receive compensation. *Id.* at 23.

Martin maintains that the Defendants' contractual arrangement means that they are private contractors, at least while they participate in Title IV-D cases. For the 326th District Court, this means that it "is only a judicial court when it is operating under the State of Texas Constitution and State of Texas." Dkt. No. 10 at 7. Martin also claims that the Office of the Attorney General is not entitled to sovereign immunity because it is a Title IV-D

---

[4] For general background on Title IV-D, see https://perma.cc/F2D3-QJCH.

agency that "is not native to the state of Texas. . . . [but] is a foreign corporation in relation to the state of Texas." Dkt. No. 21 at 3.

Martin argues that the *Rooker-Feldman* and *Younger*-abstention doctrines do not apply because the 326th District Court was "coram non judice," and, therefore, there "is not a state court proceeding, judgment or court involved." Dkt. No. 10 at 2, 5; *see also* Dkt. No. 1 at 44–47.

In response to Taylor County's Motion, Martin starts off with his claim that, "Title IV-D of the Social Security Act was never enacted into positive law." Dkt. No. 14 at 1. From this, Martin contends that Title IV-D, "only applies to the people who are contracted into it. It is not a positive law that is mandated upon the entire population." *Id.* at 6 (footnote omitted).

## IV.  ANALYSIS

The undersigned begins with the arguments that this Court lacks subject-matter jurisdiction over Martin's claims. *Daves v. Dallas Cnty., Texas*, 22 F.4th 522, 532 (5th Cir. 2022) (en banc) ("We must resolve jurisdictional questions before reaching the merits of the case, but there is no mandatory sequencing of jurisdictional issues.") (citations and internal quotation marks omitted).

## A.    Standard for dismissal under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits a party to file a motion challenging the Court's subject-matter jurisdiction to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A court must dismiss the case if it "lacks the statutory or constitutional power to adjudicate the case." *Krim v. pcOrder.com, Inc.*, 402 F.3d 489, 494

(5th Cir. 2005) (citation and internal quotation marks omitted). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming*, 281 F.3d at 161.

**B.     The Court lacks subject-matter jurisdiction for all claims against the 326th District Court and Office of the Attorney General, and several claims against Taylor County.**

The 326th District Court and Office of the Attorney General both seek dismissal on the basis that the Court lacks subject-matter jurisdiction. The 326th District Court argues that this Court lacks jurisdiction because: (1) it holds immunity under the Eleventh Amendment; (2) the *Rooker-Feldman* doctrine bars review of Martin's child-support order; (3) Martin lacks standing for his 18 U.S.C. § 241 claim; and (4) this Court should abstain from hearing Martin's case under *Younger* abstention. The Office of the Attorney General argues that this Court lacks jurisdiction because: (1) it is entitled to Eleventh Amendment immunity; and (2) Martin lacks standing for his § 241 claim.

Additionally, the Court should raise the issues of *Rooker-Feldman* and Martin's standing *sua sponte* for the claims against Taylor County. *Daves*, 22 F.4th at 531 ("A federal court has a continuing obligation to assure itself of its own jurisdiction, *sua sponte* if necessary.") (citation and internal quotation marks omitted); *Union Planters Bank Nat'l Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004) (raising *Rooker-Feldman sua sponte*); *Ford v. NYLCare Health Plans of Gulf Coast, Inc.*, 301 F.3d 329, 331–32 (5th Cir. 2002) (addressing standing *sua sponte*).

### 1. Sovereign immunity bars Martin's claims against the 326th District Court and Office of the Attorney General.

Both the 326th District Court and Office of the Attorney General (collectively, "the State Defendants") assert that this Court lacks subject-matter jurisdiction for all claims against them because they are entitled to immunity under the Eleventh Amendment. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State . . . ." U.S. Const. amend. XI.

Eleventh Amendment immunity is "convenient shorthand but something of a misnomer" for the sovereign immunity that is inherent to a State's sovereignty and our constitutional design.[5] *Alden v. Maine*, 527 U.S. 706, 713 (1999). A "fundamental aspect" of sovereign immunity is a State's immunity from being sued unless it has consented to the suit or Congress has expressly abrogated sovereign immunity.[6] *Id.* The effect of sovereign immunity is swift and total: once a court determines that a defendant is entitled to immunity, it has no subject-matter jurisdiction over any claim against them. *Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006).

Here, both State Defendants are entitled to sovereign immunity. Start with the 326th District Court. A State's sovereign immunity extends to agencies and instrumentalities that serve as "an arm of the state." *Sw. Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 938 (5th Cir. 2001). The Texas Constitution provides: "The *State* shall be divided into judicial

---

[5] Accordingly, the undersigned will use the term sovereign immunity.

[6] Those exceptions are not present here. *See Aguilar v. Texas Dept. of Crim. Just.*, 160 F.3d 1052, 1054 (5th Cir. 1998) (noting § 1983 did not abrogate sovereign immunity).

districts . . . ." Tex. Const. art. V, § 7 (emphasis added). The 326th District Court is one of those judicial districts. TEX. GOV'T CODE ANN. § 24.634 (West 2023) (establishing the 326th District Court). And because a judicial district comprises a division of the State of Texas, it is properly considered an arm of the State. *See Davis v. Tarrant Cnty., Texas*, 565 F.3d 214, 228 (5th Cir. 2009) (finding Texas judges held sovereign immunity).

It is also well established that the Office of the Attorney General is entitled to sovereign immunity. *El Bey v. Dominguez*, 540 F. Supp. 3d 653, 678 (N.D. Tex. 2020) ("The State of Texas and Texas Attorney General's Office fall squarely within even the narrowest parameters the Supreme Court has imposed on the Eleventh Amendment since 1796.").

Martin's argument to the contrary is unavailing. He maintains that the State Defendants are private contractors—and thus not entitled to immunity—because they operate according to a contract. Dkt. No. 1 at 14–21, 44. He relies on a "quote" from the Supreme Court's decision in *Clearfield Trust Co. v. United States*, 318 U.S. 363 (1943), where the Court supposedly said:

> Governments descend to the level of a mere private corporation and takes all the character of a mere private citizen where private commercial paper, notes & securities are concerned, for purposes of suit such corporations and individuals are regarded as an entity entirely separate from the government.

Dkt. No. 1 at 17. But his reliance is misplaced. The undersigned cannot find the language quoted above in the *Clearfield Trust* decision,[7] nor has he found the passage in any other judicial opinion.

---

[7] The undersigned has even gone so far as to check multiple copies of the *Clearfield Trust* opinion.

11

Moreover, there is no legal support for the proposition underlying Martin's argument—that sovereign immunity applies only to sovereign acts. Nothing in the text of the Eleventh Amendment suggests that a State's immunity from suit turns on the capacity in which it has acted, and the Supreme Court has rejected such a notion. For example, the Supreme Court has held that a State was immune from claims regarding its actions as an employer. *See Emps. of Dep't of Pub. Health & Welfare, Mo. v. Dep't of Pub. Health & Welfare, Mo.*, 411 U.S. 279, 285–87 (1973) (holding Missouri was immune from claims alleging that its employment policies for state employees violated the Fair Labor Standards Act because the Act did not "lift[] the sovereignty of the States and put[] the States on the same footing as other employers"); *see also Alden*, 527 U.S. at 712.

For these reasons, the State Defendants are entitled to sovereign immunity, and the Court lacks jurisdiction to entertain any claim against them. [8]

### 2. *The Rooker-Feldman doctrine prohibits the Court from ordering the termination of Martin's child-support case or exercising jurisdiction over his Due Process claim.*

The *Rooker-Feldman* doctrine bars lower federal courts from exercising jurisdiction over cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

---

[8] Immunity from suit notwithstanding, Martin would also fail to state a claim against the 326th District Court because it is a nonjural entity. *See Perez v. Dallas Cnty. Cts.*, No. 3:20-CV-01761-L-BT, 2020 WL 7049159, at *2 (N.D. Tex. Oct. 27, 2020) ("It is well-established that a county court is a nonjural entity that is not subject to suit."), *report and rec. adopted*, 2020 WL 7047057.

The Supreme Court has cautioned that *Rooker-Feldman* is a "narrow" jurisdictional bar that applies only "where a party in effect seeks to take an appeal of an unfavorable state-court decision to a lower federal court." *Lance v. Dennis*, 546 U.S. 459, 466 (2006) (per curiam); *see also Klick v. Cenikor Found.*, 79 F.4th 433, 443 (5th Cir. 2023). Even still, a claim that does not invite review of a state-court decision may be barred if it is "inextricably intertwined with a challenged state court judgment." *Weaver v. Tex. Cap. Bank N.A.*, 660 F.3d 900, 904 (5th Cir. 2011) (per curiam) (citation and internal quotation marks omitted).

Two aspects of Martin's action fall within *Rooker-Feldman*'s scope. First, Martin seeks relief by way of a judgment requiring the Defendants to "terminate the Title IV-D case # 47,539 and #0012984352 with prejudice." Dkt. No. 1 at 49. Even under the narrowest construction of *Rooker-Feldman*, this Court lacks jurisdiction to terminate a state-court proceeding. *Mosley v. Bowie Cnty. Texas*, 275 F. Appx. 327, 329 (5th Cir. 2008) (per curiam) (claim attacking child-support order as void was barred by *Rooker-Feldman*) (cited with approval in *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 383 (5th Cir. 2013)); *LaBranche v. Becnel*, 559 F. App'x 290, 290 (5th Cir. 2014) (per curiam) ("[F]ederal courts have no authority to direct state courts or their judicial officers in the performance of their duties.") (citing *Moye v. Clerk, DeKalb Cnty. Super. Ct.*, 474 F.2d 1275, 1276 (5th Cir. 1973)).

Additionally, Martin's Due Process claim is inextricably intertwined with the Texas judgment against him. The Fifth Circuit has made clear that a federal plaintiff cannot dress up their due process complaints as a § 1983 claim because that claim would be inextricably

intertwined with a state-court judgment. *Liedtke v. State Bar of Texas,* 18 F.3d 315, 317 (5th Cir. 1994) (plaintiff's claims that state-court judgment "violated due process in that he was not afforded a full and fair opportunity to be heard" were barred by *Rooker-Feldman*); *Richard v. Hoechst Celanese Chem. Grp., Inc.*, 355 F.3d 345, 352 (5th Cir. 2003) ("A federal court cannot examine the due process deficiencies in [the state-court decision] without disturbing the underlying judgment.").[9]

Given this unequivocal line of cases, Martin's claim that the child-support proceeding—and, by extension, the Defendants—violated his due process rights is inextricably intertwined with the state-court judgment against him, and as such, is barred by *Rooker-Feldman*.

For these reasons, the Court should dismiss Martin's request for an order terminating the child-support proceeding and his Due Process claim against Taylor County for lack of subject-matter jurisdiction.

### 3.    *Martin does not have standing to bring a claim under 18 U.S.C. § 241.*

Federal courts can assert jurisdiction over cases or controversies only, and standing is "an essential and unchanging part of the case-or-controversy requirement of Article III."

---

[9] *Accord Price v. Porter*, 351 F. Appx. 925, 926–27 (5th Cir. 2009) (per curiam) (*Rooker-Feldman* barred claim that state judge "should have been recused and challeng[ing] the validity of the outcome in the state court proceedings"); *Moore v. Texas Ct. of Crim. Appeals*, 561 F. App'x 427, 430–31 (5th Cir. 2014) (per curiam) (*Rooker-Feldman* barred due process claims); *Blessett v. Texas Off. of Att'y Gen. Galveston Cnty. Child Support Enf't Div.*, 756 F. App'x 445, 446 (5th Cir. 2019) (per curiam) (*Rooker-Feldman* precluded plaintiff's claim that he did not receive proper notice of child-support proceeding); *Batista v. Carter*, 796 F. App'x 209, 209–10 (5th Cir. 2020) (per curiam) (*Rooker-Feldman* barred claims that "either the state trial court did not follow Texas law, or the state appellate court denied him due process").

*Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

18 U.S.C. § 241 makes it a criminal offense for two or more persons to "conspire to injure, oppress, threaten, or intimidate any person in any State . . . in the free exercise or enjoyment of any right or privilege secured to him by the Constitution or laws of the United States . . . ." Crucially, like most criminal statutes, § 241 does not contain a private right of action, *see Gill v. State of Texas*, 153 F. App'x 261, 262 (5th Cir. 2005) (per curiam), which has led courts to dismiss § 241 claims brought by private citizens. *E.g.*, *Mackey v. Astrue*, No. 6:10-CV-105-BG ECF, 2011 WL 3703273, at *2 (N.D. Tex. Aug. 8, 2011) ("The Court lacks subject-matter jurisdiction to adjudicate Mackey's § 241 claim because he has no standing to assert it."), *report and rec. adopted*, 2011 WL 3701435.

Accordingly, the Court should dismiss Martin's § 241 claim for lack of subject-matter jurisdiction.

## C.    Standard for dismissal under Rule 12(b)(6)

A party may also bring a Rule 12(b)(6) motion to dismiss for "failure to state a claim upon which relief can be granted." A motion to dismiss pursuant to Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (citation and internal quotation marks omitted). The Court must "accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff." *White v. U.S. Corrs., LLC*, 996 F.3d 302, 306–07 (5th Cir. 2021).

15

"To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, a plaintiff must plead sufficient facts to "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**D.    Martin's Complaint—lacking factual veracity and relying on baseless legal conclusions—fails to state a claim against Taylor County.**

42 U.S.C. § 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's 'rights, privileges, or immunities secured by the Constitution and laws' of the United States . . . ." *Livadas v. Bradshaw,* 512 U.S. 107, 132 (1994) (quoting § 1983). To state a § 1983 claim, Martin must allege facts showing that he has been deprived of a right secured by the Constitution or the laws of the United States and the deprivation occurred under the color of state law. *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978); *see Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997) ("Merely alleging a constitutional violation or making a conclusory allegation is not enough . . . .").

Because Martin sues Taylor County, a municipality, he must satisfy the elements for municipal liability laid out in *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978). At the pleading stage, a plaintiff alleging a *Monell* claim must raise facts that plausibly establish, "a policymaker; an official policy; and a violation of constitutional

16

rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).

Here, Martin has failed to state a claim because he has not shown a violation of his constitutional rights.

### 1.    Martin has not plausibly alleged an unconstitutional seizure.

The Fourth Amendment states in part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. Const. amend. IV. Martin's Complaint alleges two unconstitutional seizures: one of his person, the other his property—both insufficient.

A person has been seized for purposes of the Fourth Amendment when a government actor "by means of physical force or show of authority terminates or restrains his freedom of movement *through means intentionally applied*." *Brendlin v. California*, 551 U.S. 249, 254 (2007) (emphasis in original) (cleaned up). A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988) (quoting *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)) (internal quotation marks omitted).

Nothing Martin alleges, however, makes it plausible that a reasonable person in his position would have felt that they were not free to leave. Martin does not allege that a government officer applied any force to his person, *see generally* Dkt. No. 1 at 26, 36–38,

so, instead, he must demonstrate that he submitted to a show of authority. Toward this end, Martin claims that he was placed under duress—seemingly implying that he submitted to a show of authority—due to the presence of armed bailiffs in the courtroom. *Id.* at 26.

But Martin does not allege that these bailiffs did anything other than be present. Courts have held that the mere presence of law enforcement does not present a sufficient show of authority. *E.g.*, *Chesternut*, 486 U.S. at 576 ("While the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure.") (footnote omitted).[10] Without additional facts demonstrating an actual show of authority, it is not plausible that the Defendants seized Martin.

Martin also fails to show an unconstitutional seizure of his property. A person's property has been seized when there has been "some meaningful interference with an individual's possessory interests in that property." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984). Martin alleges that the Defendants meaningfully interfered with his property when they garnished his wages without an order authorizing them to do so. Dkt. No. 1 at 30. While he acknowledges that the Defendants produced an order, he says it was not valid because it lacked a judicial signature "according to 28 U.S.C. § 1691." *Id.* at 32.

Section 1691 provides:

---

[10] *Accord Gomez v. Turner*, 672 F.2d 134, 142 (D.C. Cir. 1982) ("[T]he presence of the officer as a figure of governmental authority does not, by itself, constitute the 'show of authority' necessary to make a reasonable person feel unfree to leave."); *Richard v. City of Harahan*, 6 F. Supp. 2d 565, 572 (E.D. La. 1998) ("Mere presence at the scene to prevent a breach of the peace does not violate § 1983 because the requisite state action is lacking.").

> All writs and process issuing from ***a court of the United States*** shall be under the seal of the court and signed by the clerk thereof.

(emphasis added). Yet, by its very terms, § 1691 applies only to orders issued by a court of the United States—it places no requirements on orders from a state court.

For these reasons, Martin has not plausibly alleged a Fourth Amendment violation.

### 2. *Even if Rooker-Feldman did not bar Martin's Due Process claim, he failed to raise his complaints in state court.*

The Fourteenth Amendment prohibits States from depriving persons "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. But even if the Court had jurisdiction over Martin's Due Process claim, there is a robust line of Fifth Circuit cases in which the Court has held that a plaintiff cannot bring a claim alleging a denial of due process when they have not utilized state procedures capable of addressing insufficient process. *Burns v. Harris Cnty. Bail Bond Bd.*, 139 F.3d 513, 519 (5th Cir. 1998) ("[A] plaintiff cannot argue that her due process rights have been violated when she has failed to utilize the state remedies available to her."); *Browning v. City of Odessa,* 990 F.2d 842, 845 n.7 (5th Cir. 1993) ("This Court has consistently held that one who fails to take advantage of procedural safeguards available to him cannot later claim that he was denied due process.") (citing *Rathjen v. Litchfield*, 878 F.2d 836, 839 (5th Cir. 1989) and *Galloway v. State of Louisiana*, 817 F.2d 1154, 1158 (5th Cir. 1987)); *Myrick v. City of Dallas,* 810 F.2d 1382, 1388 (5th Cir. 1987).

Martin's claim that the child-support proceeding did not comport with due process rests squarely within this line of cases. His various complaints with the procedural aspects

of the support proceeding could, and should, have been raised before the Texas Court of Appeals. *See e.g.*, *Iliff v. Iliff*, 339 S.W.3d 126, 135–38 (Tex. App.–Austin 2009) (reviewing child-support order); *see also Interest of A.S.M.*, 650 S.W.3d 85, 93 (Tex. App.–El Paso 2021) (addressing argument that trial court did not allow a father to present evidence in support of a motion during a child-support proceeding); *In re Mann*, 162 S.W.3d 429, 432–34 (Tex. App.–Fort Worth 2005) (sustaining appellant's due process argument and voiding the child-support contempt order against him); *In re Roisman*, 651 S.W.3d 419, 434–37 (Tex. App.–Houston [1st Dist.] 2022) (same). Instead, Martin brought this lawsuit more than three years after the 326th District Court issued the child-support order. *See* Taylor County Case No. 47539-C.[11] Having spurned his state-court opportunities to review the sufficiency of the support proceeding's procedural safeguards, Martin, cannot come to this Court and complain that he was denied due process.

### 3. *The Defendants did not compel Martin to bear witness against himself.*

The privilege against self-incrimination originates from the Fifth Amendment, however, it applies to the States via the Fourteenth Amendment's Due Process Clause. *Malloy v. Hogan*, 378 U.S. 1, 6 (1964). The privilege allows a person "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the

---

[11] The Court may properly take judicial notice of the timing of Martin's child-support proceeding and the judgment against him. *See Texas Health & Hum. Servs. Comm'n v. United States*, 193 F. Supp. 3d 733, 738 (N.D. Tex. 2016) (noting the consideration of matters capable of judicial notice on a motion to dismiss is appropriate); *Colonial Leasing Co. of New England v. Logistics Control Grp. Int'l*, 762 F.2d 454, 459–61 (5th Cir. 1985) (collecting cases and approving judicial notice of a judgment from another court).

answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley*, 414

U.S. 70, 77 (1973). The privilege, however:

> [S]peaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, therefore, he desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment.

*United States v. Monia*, 317 U.S. 424, 427 (1943).

Martin does not claim that he asserted his privilege against self-incrimination during

the support proceeding, in fact, quite the opposite. He complains instead that the Defend-

ants did not read him his *Miranda* rights or otherwise advise him of his privilege against

self-incrimination before he signed the voluntary acknowledgment of paternity. In essence,

Martin argues that he did not knowingly and voluntarily waive his privilege.

Thus, Martin's claim hinges upon whether the Defendants were required to provide

*Miranda* warnings or tell Martin of his privilege against self-incrimination—which they

were not. First, at no point were the Defendants required to give a *Miranda* warning be-

cause Martin was not in custody.[12] *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977) ("*Mi-

randa* warnings are required only where there has been such a restriction on a person's

freedom as to render him 'in custody.'").

---

[12] Martin was not in custody because he never suffered a Fourth Amendment seizure of his person. Although "in custody" and "seizure" are not synonymous, the fact that Martin cannot make out the lesser standard for a seizure demonstrates that he was not in custody. *United States v. Bengivenga*, 845 F.2d 593, 598 (5th Cir. 1988) ("[A] Fourth Amendment seizure does not necessarily render a person in custody for purposes of *Miranda*.").

And to the extent that a *Miranda* warning differs from a warning regarding the privilege against self-incrimination, the fact that Martin was not in custody is still dispositive. *United States v. White*, 846 F.2d 678, 689 (11th Cir. 1988) ("In a non-custodial interrogation, 'an individual may lose the benefit of the privilege *without making a knowing and intelligent waiver*.'") (emphasis added) (quoting *Garner v. United States*, 424 U.S. 648, 654 n.9 (1976)); *see also Minnesota v. Murphy*, 465 U.S. 420, 427–34 (1984) (probation officer's failure to inform defendant of his Fifth Amendment privilege did not render his waiver of privilege or subsequent confession involuntary).

Martin *could have* asserted the privilege against self-incrimination during the support proceeding, but he did not. For this, there is no one to blame other than Martin himself, because he, and he alone, was the shepherd of his privilege. *Monia*, 317 U.S. at 427 (noting a person wishing to invoke the privilege "must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment"). By signing the acknowledgment of paternity, Martin forfeited his privilege against self-incrimination.

For these reasons, Martin has not plausibly alleged that he was compelled to bear witness against himself.

### 4.    *Martin did not have a right to a jury during the child-support proceeding.*

The Seventh Amendment guarantees that: "In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved . . . ." U.S. Const. amend. VII. Critically, though, the Seventh Amendment does not apply to state-court proceedings. *Minneapolis & St. Louis R.R. Co. v. Bombolis*, 241 U.S. 211, 217 (1916) ("[T]he 7th Amendment applies only to proceedings in courts of the United States,

and does not in any manner whatever govern or regulate trials by jury in state courts . . . .");
*see McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 765 n.13 (2010) ("[T]he only rights not fully incorporated are . . . the Seventh Amendment right to a jury trial in civil cases . . . ."). Thus, Martin cannot vindicate a right that he never had.

### 5.    *Paying court-ordered child support is not slavery.*

The Thirteenth Amendment provides: "Neither slavery nor involuntary servitude . . . shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. Martin alleges that the Defendants, by requiring him to pay child support under the threat of civil and criminal penalties, have forced him into involuntary servitude. Martin's theory that child support constitutes de facto slavery is not novel, and courts across the country have routinely rejected similar claims. *United States v. Ballek*, 170 F.3d 871, 874–75 (9th Cir. 1999) ("We conclude that child-support awards fall within that narrow class of obligations that may be enforced by means of imprisonment without violating the constitutional prohibition against slavery.") (footnote omitted); *Adams v. Cnty. of Calhoun*, No. 1:16-CV-678, 2018 WL 1324465, at *2 (W.D. Mich. Mar. 15, 2018) (collecting cases and noting, "[t]here is no comparison between paying court-ordered child support and compulsory, involuntary servitude.").[13] This universal rejection means that Martin cannot plausibly allege a violation of his Thirteenth Amendment rights.

---

[13] *See also Harvison v. Little*, No. 1:22-CV-01103-JDB-jay, 2023 WL 4564554, at *5 (W.D. Tenn. July 17, 2023) (citing *Adams*, 2018 WL 1324465, at *2); *Brooks v. D'Errico*, 527 F. Supp. 3d 105, 109 (D. Mass. 2021); *Jackson v. Child Support*, No. 8:18-CV-2848-T-36SPF, 2018 WL 8754206, at *4 (M.D. Fla. Dec. 5, 2018), *report and rec. adopted*, 2019 WL 2052324*; Allen v. Howard*, No. CIV.A. 13-233, 2014 WL 2120092, at *5–6 (E.D. La. May 21, 2014).

### 6. *Martin has not shown unconstitutional discrimination.*

The Fourteenth Amendment guarantees "equal protection of the laws." U.S. Const. amend. XIV, § 1. To state a claim under the Equal Protection Clause, a plaintiff must plausibly allege that, "a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (citation and internal quotation marks omitted).

Martin claims that he was discriminated against based on his sex because "[t]he mother is given the ability to close the case at will in 45 CFR § 303.11(12)[;] [t]his is not given to the man so he is treated differently." Dkt. No. 1 at 43 (footnote omitted). Martin does not cite any other way in which the Defendants treated him differently. Thus, his Equal Protection claim rises or falls with whether 45 C.F.R. § 303.11 discriminates on the basis of sex.

Nothing within 45 C.F.R. § 303.11 hints at impermissible sex discrimination; the regulation merely lays out the criteria for when a Title IV-D agency may choose to terminate a case. *See generally* 45 C.F.R. § 303.11. Moreover, the provision specifically cited by Martin, § 303.11(b)(12), simply allows for the closure of a case when: "The non-IV-A recipient of services requests closure . . . ." Although Martin imputes "mother" where the regulation says "non-IV-A recipient of services," the regulation—on its very face—does not give mothers additional rights or protections that are not afforded to fathers.

Accordingly, Martin has not adequately alleged a violation of his rights under the Fourteenth Amendment's Equal Protection Clause.

## V.  LEAVE TO AMEND

As a general practice, "a *pro se* litigant should be offered an opportunity to amend his complaint before it is dismissed." *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009). Leave to amend is not required, however, where an amendment would be futile, in other words, the amended complaint would still fail to state a claim, *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014). Thus, the Court would review any proposed amendment under "the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Stripling v. Jordan Prod. Co., LLC,* 234 F.3d 863, 873 (5th Cir. 2000) (citation and internal quotation marks omitted).

To defeat a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. The facts alleged by plaintiffs must "raise a right to relief above the speculative level." *Id*. at 555. While a plaintiff need not detail specific factual allegations, a complaint must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.; *accord Iqbal*, 556 U.S. at 678 (noting that "the tenet that a court must accept as true all of the allegations in the compliant is inapplicable to legal conclusions").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). Additionally, Rule 12(b)(6) authorizes a court to dismiss claims that have no basis, arguable or otherwise, in the law. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

A complaint lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Neitzke*, 490 U.S. at 326–27; *Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999). A claim lacks an arguable basis in fact "if the facts alleged are clearly baseless, a category encompassing allegations that are fanciful, fantastic, and delusional." *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992). And a complaint that lacks even an arguable basis in law or fact is deemed "frivolous." *Neitzke,* 490 U.S. at 325; *Brewster*, 587 F.3d at 767.

Here, Martin has not had a previous opportunity to amend his claims. So, the undersigned has carefully considered whether granting him leave to amend at this juncture would be futile. The undersigned observes initially that Martin's Complaint is 50 pages long and accompanied by a 24-page brief. Dkt. Nos. 1; 1–1. Additionally, Martin has filed a combined 388 pages in response to the Defendants' motions. Martin has undoubtedly had an opportunity to plead his best case. Dkt. Nos. 11; 14; 14-1–7; 16; 18; 18-1–4.

As a threshold matter, the Court should deny leave to amend the claims for which the Court lacks subject-matter jurisdiction—*i.e.*, Martin's (1) claims against the 326th District Court and Office of the Attorney General; (2) Due Process claim; and (3) 18 U.S.C. § 241 claim—because there is no amendment that can salvage those claims.

Additionally, leave to amend the Seventh and Thirteenth Amendment claims is not warranted because both claims are based on indisputably meritless legal theories regarding a non-existent federally-protected right to a jury trial in state-court proceedings and an irredeemably flawed argument that child support constitutes slavery. In other words, those claims are legally frivolous, not merely factually insufficient.

Finally, Martin should not be granted leave to amend his Fourth Amendment, privilege-against-self-incrimination, and Equal Protection claims. To be clear, these claims are not legally baseless. Nor do they suffer from factual insufficiency. Martin has provided more than enough factual content for the Court to assess these claims. Indeed, he has provided enough facts for the undersigned to determine that more facts will not help. Rather, these claims suffer from the incurable malady of being factually frivolous.

For these reasons, it is the considered judgment of the undersigned that granting Martin leave to amend his claims would be a waste of judicial resources, serve to merely prolong the inevitable, and should be denied.

## VI.  CONCLUSION

For the reasons explained above, the undersigned RECOMMENDS that the Court:

(1) GRANT the 326th District Court's Motion and DISMISS all claims against it for lack of subject-matter jurisdiction;

(2) GRANT the Office of the Attorney General's Motion and DISMISS all claims against it for lack of subject-matter jurisdiction;

(3) *sua sponte* DISMISS Martin's Due Process and 18 U.S.C. § 241 claims against Taylor County for lack of subject-matter jurisdiction;

(4) GRANT Taylor County's Motion and DISMISS the remaining claims against it for failure to state a claim; and

(5) DENY Martin leave to amend his claims.

## VII.  RIGHT TO OBJECT

A copy of these Findings, Conclusions, and Recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of these Findings, Conclusions, and Recommendations must file specific written objections within fourteen days of being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendations where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs*. *Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

ORDERED this 22nd day of December 2023.


_____
JOHN R. PARKER
UNITED STATES MAGISTRATE JUDGE

28